[Cite as *State v. McDuffie*, 2020-Ohio-5466.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO. 9-19-82

    v.

WILLIAM A. MCDUFFIE,            O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 19-CR-026

**Judgment Affirmed**

Date of Decision: November 30, 2020

APPEARANCES:

    *William T. Cramer*  for Appellant

    *Nathan R. Heiser*  for Appellee

Case No. 9-19-82

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, William A. McDuffie ("McDuffie"), appeals his October 31, 2019 sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arose after the MARMET Drug Task Force ("Task Force") obtained and executed a search warrant at McDuffie's residence in Marion, Ohio on January 11, 2019. (Doc. No. 45). During the search of McDuffie's bedroom, the Task Force discovered 24.12 grams of crack cocaine located inside a plastic baggie hidden in a plastic container. (*Id.*). Further, during the search, Kayla Hamm ("Hamm"), McDuffie's girlfriend, was searched yielding the discovery of a cell-phone and $1,089 in cash thought to be the proceeds of illegal-drug sales. (*Id.*). (*See* PSI).

{¶3} On January 24, 2019, the Marion County Grand Jury indicted McDuffie and Hamm (in a joint indictment) on one count of Possession of Cocaine in violation of R.C. 2925.11(A), (C)(4), a second-degree felony. (Doc. No. 2). McDuffie's indictment included a forfeiture specification as to property under R.C. 2941.1417 and R.C. 2981.02.[1] (Doc. No. 2). On January 28, 2019, McDuffie appeared for arraignment and entered a plea of not guilty. (Doc. No. 5).

---

[1] Hamm ultimately plead guilty to Possession of Cocaine, a fourth-degree felony. (Oct. 9, 2019 Tr. at 143-144).

{¶4} On October 9, 2019, McDuffie's case proceeded to a jury trial, where he was found guilty of Possession of Cocaine. (Doc. No. 64). At McDuffie's sentencing hearing, the State moved to dismiss the forfeiture specification in the indictment, which the trial court granted. (Doc. No. 67). Thereafter, the trial court sentenced McDuffie to a mandatory-prison term of eight years.[2] (Oct. 28, 2019 Tr. at 13); (Doc. No. 67).

{¶5} McDuffie filed his notice of appeal on November 15, 2019, and he raises two assignments of error for our review, which we will address separately. (Doc. No. 71).

### Assignment of Error No. I

**Appellant's due process right to a fair trial was violated by the admission of evidence of other acts that were used to draw an improper character inference.**

{¶6} In McDuffie's first assignment of error, he argues that the trial court abused its discretion by permitting the State to use "other acts" evidence against McDuffie (the accused) which violated his due process right to a fair trial. Specifically, McDuffie asserts that the trial court erred when it permitted the State to cross-examine Hamm (a witness) attempting to elicit testimony (from her) that McDuffie had knowledge that there were drugs in their bedroom.

---

[2] The trial court further ordered the imposition of a $7,500 mandatory-minimum-drug fine, and McDuffie received 72 days' jail-time credit. (Oct. 28, 2019 Tr. at 13); (Doc. No. 67). The trial court later filed a *nunc pro tunc* judgment entry correcting a clerical error. (Doc. No. 69).

Case No. 9-19-82

**{¶7}** "'Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith.'" *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 21, quoting *State v. Hawthorne*, 7th Dist. Columbiana No. 04 CO 56, 2005-Ohio-6779, ¶ 24, citing *State v. Elliott*, 91 Ohio App.3d 763, 770 (3d Dist.1993) and Evid.R. 404. However, "[t]he admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law." *State v. Hartman*, ___ Ohio St.3d ___, 2020-Ohio-4440, ¶ 22.

**{¶8}** Accordingly, this Court reviews de novo whether a trial court admitted improper character evidence and will apply an abuse-of-discretion standard to evidentiary decisions regarding the admission of other-acts evidence for permissible purposes. *See id*. *See also State v. Glenn-Culverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 24 ("Thus, a reviewing court will not reverse a trial court's evidentiary ruling absent an abuse of discretion that materially prejudices the affected party."), citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

**{¶9}** "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147

(1992). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). However, "if the party wishing to exclude evidence fails to contemporaneously object at trial when the evidence is presented, that party waives for appeal all but plain error." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 53, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 59-60, *State v. Barrett*, 4th Dist. Scioto No. 03CA2889, 2004-Ohio-2064, ¶ 20, and *State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶ 19.

{¶10} "Crim.R. 52(B) governs plain-error review in criminal cases." *Bagley* at ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-1414, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.*, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).

*Analysis*

{¶11} Initially, we must determine whether McDuffie preserved this issue for appeal. McDuffie's argument concerns the testimony of Hamm regarding the ownership of and (McDuffie's) knowledge of the drugs concealed in the plastic

container found in their bedroom. (Oct. 9, 2019 Tr. at 81, 84-87, 92, 101, 110). After Hamm testified that she was the sole owner and only person with knowledge as to the location of the drugs, the State sought to impeach her through the use of data recovered from the search of her cell-phone (which yielded text messages between Hamm and McDuffie) that called her testimony into question. (*Id.* at 114-115). Notably, McDuffie objected to the admission of the text messages on the basis that such messages had not been authenticated, were prejudicial, and were stale evidence. (*Id.* at 116-123). The trial court overruled McDuffie's objections. (*Id.* at 118, 124). Specifically, the trial court noted that the cross-examination of Hamm (as to the content of the text messages) was permissible and the State would be given some latitude because it was being offered as impeachment evidence regarding Hamm's credibility for truthfulness or untruthfulness under Evid.R. 608(B) and not (nonpropensity evidence) under 404(B) as to McDuffie's knowledge. (*See id.* at 118-119, 121-123). Importantly, McDuffie never objected to Hamm's testimony on *any* basis after his initial objections. Moreover, the State did not seek to offer State's exhibit 30 (the text message printout) into evidence. (*Id.* at 114-124). As such, under the facts presented, we will apply plain error in our review. *See* Crim.R. 52(B).

{¶12} McDuffie contends that the trial court permitted Hamm to testify to "other acts" evidence that is inadmissible because it suggests that McDuffie has a

propensity or proclivity to commit drug-related crimes. However, because the testimony was elicited on cross-examination to impeach Hamm (and not the accused—McDuffie) as to *her* credibility for truthfulness or untruthfulness, the evidence falls within the scope of Evid.R. 404(A)(3), 607, 611, 608(B) and not 404(B). *See* Evid.R. 404(A)(3), 607, 611, and 608(B). *See also* Evid.R. 616(A), (B). (Oct. 9, 2019 Tr. at 118-119, 121-123).

{¶13} Evid.R. 607 states in pertinent part:

> The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(A), 801(D)(2), or 803.

Evid.R. 607(A). "'Cross-examination shall be permitted on all relevant matters and matters affecting credibility.'" *State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, ¶ 73, quoting Evid.R. 611(B). Under Evid.R. 608, the credibility of a witness may be attacked through opinion, reputation, and specific instances of conduct evidence as to the character of the witness for truthfulness or untruthfulness. *See* Evid.R. 608. Moreover, and relevant to the facts presented, under Evid.R. 616, a witness may be impeached as to bias (motive to misrepresent), sensory or mental defect (inability to remember the events), and specific contradictions within certain limitations. *See* Evid.R. 616 (A)-(C).

{¶14} Here, the State attacked the credibility of Hamm on cross-examination under Evid.R. 608 and 616. (*See* Oct. 9, 2019 Tr. at 118-119, 121-123). Notwithstanding the permissibility of such an attack on a witness' credibility under Evid.R. 608(B), Evid.R. 403(A) would mandate exclusion of this type of relevant-character evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."[3]

{¶15} However, and important to this discussion, Hamm testified that the large quantity of crack cocaine (24.12 grams) seized was for her exclusive-personal use and that McDuffie was not aware that she used crack cocaine or that the crack cocaine was located in their bedroom. (*See* Oct. 9, 2019 Tr. at 87-88, 101, 110). Here, the State's line of questioning (of Hamm) attacked Hamm's credibility, since such evidence indicated that McDuffie was aware that Hamm possessed the drugs, and that such drugs were not for Hamm's exclusive-personal use. (*See id.*). As a consequence, the jury was free to conclude that since Hamm was not credible (because she was untruthful as to McDuffie's knowledge of her drug use and the purpose of her possession) perhaps the remainder of her testimony lacked any indicia of truthfulness. *See State v. Schwegmann*, 1st Dist. Hamilton No. C-180053, 2018-Ohio-3757, ¶ 11, citing *State v. Hussein*, 1st Dist. Hamilton No. C-020155, 2003-Ohio-1369, ¶ 8, citing *State v. Boggs*, 63 Ohio St.3d 418, 421 (1992).

---

[3] Because McDuffie does not challenge whether Hamm's testimony is relevant or admissible as such, we will not address the applicability of Evid.R. 401 and 402.

{¶16} Moreover, Hamm was subject to impeachment by the State as to bias (i.e., her motive to misrepresent the ownership of the drugs as well as McDuffie's knowledge of the drugs because of their relationship) and to a sensory or mental defect (for her inability to remember certain text messages with McDuffie despite being able to recall other unrelated text messages). (*See* Oct. 9, 2019 Tr. at 97-98, 132, 133, 138, 141). *See Hussein* at ¶ 8-9. Her testimony is not merely contradictory testimony on collateral issues, but rather, material to the issue presently before the trial court regarding the truthfulness of this witness. *See Boggs* at 422.

{¶17} Nevertheless, the trial court admonished the parties to proceed carefully because of its duty to consider mandatory exclusion under Evid.R. 403(A) stating:

[Trial Court]    Again, that being said, I want to caution the parties that I'm going to continue to weigh the probative value as compared to the prejudicial effect of any evidence that might sought to be elicited.

The mere fact that I'm saying that this witness can be cross-examined does not mean that everything is now fair game.    And I think the Prosecutors know what I'm saying.  Are [sic] well aware of the fact that the Defendant in this case is not charged with

Trafficking, that I'm not, by saying that this witness can be cross-examined in order to examine potential inconsistencies or untruthfulness that there may be in her testimony for the purposes of impeaching her.

That does not mean that I'm saying that the State would now have carte blanche to go into other things that may be indicative of trafficking of drugs on the part of the Defendant. We're not going to go there. Let me [sic] abundantly clear about that. So anything further that we need to address while out of the presence of the jury?

(Oct. 9, 2019 Tr. at 121-122). Notably, McDuffie never objected on the basis that exclusion was mandatory or discretionary under Evid.R. 403.

{¶18} Thus, upon our review of the record, we cannot conclude that there is an obvious defect in this trial that affected McDuffie's substantial rights. Notwithstanding the foregoing, and even if we were to have concluded otherwise, McDuffie cannot demonstrate prejudice since Hamm was not able to recall the content of any of the text messages despite the attempts made by the State to refresh her recollection. (*Id.* at 132-133). *See* Evid.R. 612. Accordingly, McDuffie's argument is without merit.

{¶19} Moreover, we cannot conclude that the there is any error and certainly not error that rises to the level of plain error in relation to Hamm's impeachment by the State, which has caused a manifest miscarriage of justice warranting a new trial. Therefore, McDuffie's first assignment of error is overruled.

**Assignment of Error No. II**

**Appellant's due process right to a fair trial was violated by the prosecutor's improper comments regarding the credibility of a witness during closing argument.**

{¶20} In his second assignment of error, McDuffie asserts that during closing arguments the prosecutor engaged in prosecutorial misconduct, denying him a fair trial. Specifically, he claims that the prosecutor made a suggestion (during closing argument) that Hamm while testifying in court, was being intimidated by McDuffie, and thus, that there was an impermissible inference that jury should find her testimony not credible.

*Standard of Review*

{¶21} "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶ 31, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. Thus, "[n]ot every

-11-

intemperate remark by counsel can be a basis for reversal.""" *Id.*, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, ¶ 20, quoting *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990). "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist.1995).

*Analysis*

{¶22} McDuffie points to the following exchange between the prosecutor and the jury regarding Hamm's testimony:

> [State of Ohio]     I find it kind of interesting when she was on her direct examination that Mr. McDuffie was staring her straight in the face and she looked straight back at him. She seemed deathly afraid of Mr. McDuffie. She seemed deathly afraid of the people around. And she seemed like she was trying testify just to please him today.

(Oct. 9, 2019 Tr. at 170). At the conclusion of the State's closing arguments, at a sidebar, the defense moved for a mistrial on the basis that the prosecutor insinuated to the jury that Hamm was being intimidated by or scared of McDuffie. (*Id.* at 173).

-12-

Thereafter, the trial court admonished the prosecutor for his comments, but denied the defense's motion for a mistrial. (*Id.* at 174). Importantly, the trial court gave a curative instruction to the jury (instructing them to disregard the comments made by the prosecutor as part of his closing argument) prior to the defense's closing arguments. (*Id.* at 175).

{¶23} Addressing prosecutorial misconduct allegations related to closing arguments, "[p]arties have wide latitude in their closing statements, particularly 'latitude as to what the evidence has shown and what inferences can be drawn from the evidence.'" *State v. Wolff*, 7th Dist. Mahoning No. 07 MA 166, 2009-Ohio-7085, ¶ 13, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 213. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 159, ("A prosecutor may state an opinion if based on evidence presented at trial."). "'The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Rasawehr*, 3d Dist. Mercer No. 10-19-15, 2020-Ohio-429, ¶ 12, quoting *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 9, citing *State v. Smith*, 14 Ohio St.3d at 14. "'A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning.'" *Id.* at ¶ 13, quoting *Encarnacion* at ¶ 10, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637,

647, 94 S.Ct. 1868, 1873 (1974). "'Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred.'" *Id.*, quoting *Encarnacion* at ¶ 10, citing *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995).

{¶24} Even if we assume, without deciding, that the prosecutor's comments were improper in satisfaction of the first prong of the prosecutorial-misconduct test, McDuffie cannot establish prejudice here because the trial court gave the jury a curative instruction which we conclude was sufficient to relieve any prejudice that McDuffie may have suffered. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 170, citing *State v. Loza*, 71 Ohio St.3d 61, 75 (1994), *overruled on other grounds*, ("The trial court's curative instruction was sufficient to relieve any prejudice."). As such, McDuffie cannot establish the second prong of the prosecutorial-misconduct test under the facts before us.

{¶25} In our review of the record, we cannot conclude that the statements of the prosecutor made during closing argument are prejudicial error.

{¶26} Accordingly, McDuffie's second assignment of error is overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and WILLAMOWSKI, J., concur.**